UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DEMETRIUS MASHAWN MOORE,

                Petitioner,

v.

GREGORY SKIPPER,

                Respondent.

_____/

Case No. 1:20-cv-1052

Honorable Janet T. Neff

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Petitioner Demetrius Mashawn Moore is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan.  On October 29, 2018, Petitioner pleaded guilty in the Wayne County Circuit Court to second-degree murder, in violation of Mich. Comp. Laws § 750.317, and felony-firearm-second, in violation of Mich. Comp. Laws § 750.227b. On November 20, 2018, the court sentenced Petitioner to a prison term of seventeen to forty years for murder to be served consecutively to a sentence of five years for felony-firearm-second.  Those sentences, in turn, were to be served consecutively to sentences for armed robbery and felony-firearm convictions from two other Wayne County criminal prosecutions.  Petitioner's earliest release date is November 19, 2040;  his  maximum  discharge  date  is  July  12,  2075.      *See*

https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=703509    (visited July 10, 2021).

On October 28, 2020, Petitioner filed his habeas corpus petition raising one ground for relief, as follows:

> I.    The Michigan Court of Appeals unreasonably applied the *Hill v. Lockhart* standard to assess whether Petitioner Demetrius Moore was denied his Sixth Amendment right to make an informed and intelligent decision whether to plead guilty and the sentence he would receive when his retained attorney made Petitioner believe he would be sentenced to time served based on a plea of guilty.

(Pet., ECF No. 1, PageID.6.)  Respondent has filed an answer to the petition (ECF No. 4) stating that the petition should be denied because it lacks merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that Petitioner's sole ground for habeas relief is meritless.  Accordingly, I recommend that the petition be denied.

## <u>Discussion</u>

## I.    Factual allegations

Petitioner's application for leave to appeal to the Michigan Court of Appeals described the facts underlying his prosecution as follows:

> The events that resulted in Mr. Moore's arrest in this case, as noted in the Presentence Investigation Report (see attached Exhibit 3), occurred at an address on Rossiter Street in the City of Detroit on November 26, 2017, around 2:30 p.m., in the early afternoon.  Detroit police officers reported being dispatched to this address in response to a reported shooting.  Upon arrival, the officers reported observing the complainant, the late Mr. Joseph Bond, Jr., lying in front of the location on his back with an apparent gunshot wound to his head.  Medics arrived shortly thereafter but were unable to offer any assistance as they pronounced Mr. Bond dead at the scene.

On December 12, 2017, Detroit police authorities involved in the subject investigation reported analyzing the cell phone records of Mr. Bond, Mr. Moore, and co-defendant Mr. Tyree Bentley, and determined that the three men were in the same general area before Mr. Bond's cell phone went silent.  In addition, the DNA obtained from a rifle recovered by authorities matched the DNA profile of Mr. Moore.  Similarly, the DNA profile belonging to Mr. Bentley matched the DNA profile found on Mr. Bond's left fingernail clippings.

During the Plea Hearing on October 29, 2018, Mr. Moore gave an allocution in which he admitted to all of the needed elements supporting both charges against him.  He admitted to shooting Mr. Bond in the head with the rifle outside an address on Rossiter Street near his home; he further admitted his intent at the time was to kill this individual. (Transcript of the Plea Hearing (hereinafter, "TPH"), dated October 29, 2018, pp. 9–11).  Mr. Moore's plea to these two charges was accepted by the trial court judge, the Honorable Mark T. Slavens, as having been knowingly and voluntarily entered. (TPH, dated October 29, 2018, p. 12).

(Pet'r's Appl. for Leave to Appeal, ECF No. 5-5, PageID.138–139.)  Petitioner was sentenced consistently with the plea agreement: he received a sentence of seventeen to forty years for second-degree murder, to be served consecutively to a sentence of five years for felony-firearm.  Petitioner's minimum sentence for the second-degree murder conviction represented a downward departure from the range provided under the Michigan sentencing guidelines.

Petitioner filed an application for leave to appeal his convictions and sentences to the Michigan Court of Appeals.  Petitioner raised two issues in his application, both related to the voluntariness of his plea.  Essentially, Petitioner argued that his plea was involuntary because he did not understand the consequences.  That misunderstanding, Petitioner argued, was brought about by ineffective assistance from his counsel.  Although the application is short on specifics regarding Petitioner's expectation, it does state: "Mr. Moore reported being aware of the unfavorable impact

his parole status would have on the amount of time he would be required to serve, but indicated he was assured by his retained counsel that other arrangements would be made to reduce the total amount [of] time required." (Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 5-5, PageID.142.) Thus, it appears that Petitioner's misunderstanding centered on negative consequences flowing from his parole status when he committed the offenses.

Petitioner's vague argument is more understandable, perhaps, if one considers how parole status can impact sentencing for a subsequent crime. There are two distinct, but related, impacts that follow from committing a new criminal offense while on parole. First, the sentence for the new crime will be consecutive to completion of the sentence for the parole offenses. Mich. Comp. Laws § 768.7a(2). At the time Petitioner shot and killed Joseph Bond, he was on parole from a consecutive string of sentences for armed robberies and a felony-firearm offense imposed by the Wayne County Circuit Court on October 7, 2008. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=703509 (visited July 10, 2021). At the time of the new offenses, Petitioner had not yet been discharged from two sentences of five to twenty years for armed robbery to be served consecutively to a sentence of two years for felony firearm. *Id*. Because Petitioner had been paroled, however, he must have served the minimums, a total of at least seven years.[1] His new sentences would be consecutive to completion of the balance of his parole sentences.

---

[1] The exact date of Petitioner's parole does not appear in the materials submitted by Petitioner or Respondent. Nonetheless, it is apparent that Petitioner had 10 to 12 years remaining on his parole sentence maximums when he committed the present

And second, time spent in custody following commission of the new offense while awaiting trial and sentencing is not credited against the new sentence, it is credited against the parole offenses.  Michigan Compiled Laws § 769.11b provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

*Id*.  Typically, the time Petitioner spent in jail following his arraignment, but before his sentence would be credited against the sentence that is ultimately imposed.  That result is compelled by the statute cited above.  *People v. Seiders*, 686 N.W. 2d 821, 824 (Mich. Ct. App. 2004) ("[T]he sentencing credit provision in MCL 769.11b is mandatory . . . .").  But it is only required for a person who is held in jail because "he has been '*denied or unable to furnish bond*.'"  Id.  (emphasis in original).  A parolee who is arrested for a new criminal offense, however, is not held because he has been denied or is unable to furnish bond; "he is held on a parole detainer . . . ."  *Id*. at 823.  That does not mean he is denied credit for the time he is detained.  It means that the "credit may only be applied to the sentence for which the parole is granted."  *Id*. (citing Mich. Comp. Laws § 791.238(2)).  That result is logical because "[a] parolee who is sentenced for a crime committed while on parole must serve the remainder of the term imposed for the previous offense before he serves the term imposed for the subsequent offense."  *Id* at 824, citing Mich. Comp. Laws § 768.7a(2).

---

offenses because his maximum discharge date is roughly that much later than the consecutive maximum string for the present sentences would yield.

It appears that Petitioner's misunderstanding was based on "credit for time served" not on the fact that his new sentences would be consecutive to his parole sentences, because the consecutive nature of the new sentences was specifically addressed by the trial judge at the plea hearing and Petitioner represented that he understood that consequence.  (Plea Hr'g Tr., ECF No. 5-2, PageID.104–105.)  The exact nature of the misunderstanding, however, was still a bit mysterious even as presented in Petitioner's application for leave to appeal to the Michigan Court of Appeals.  The Court can only look to the argument as presented by Petitioner's counsel, which includes the following cryptic statements:

> 1.     It should be noted the low-end of the sentencing range agreed to by the parties (i.e., 17 years) was <u>below</u> the low-end of the guideline range (i.e., 225 months, or a little over 18 years).  Nonetheless, Mr. Moore maintains it was his impression—based [on] his private meetings with retained counsel—he would be ordered to serve an even lower term. (Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 5-5, PageID.13) (emphasis in original).
>
> 2.     Mr. Moore reported being aware of the unfavorable impact his parole status would have on the amount of time he would be required to serve, but indicated he was assured by his retained counsel that other arrangements would be made to reduce the total amount of time required.  (*Id.*, PageID.142.)
>
> 3.     By encouraging Mr. Moore to plead guilty without first settling on the amount of time he would be required to serve in all cases, retained counsel committed serious mistakes that caused prejudice to Mr. Moore. (*Id.*)

By order entered July 9, 2019, the court of appeals denied Petitioner's application "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 5-5, PageID.129.)

Petitioner's position was not clarified in his *pro per* application for leave to appeal to the Michigan Supreme Court.  In that court, Petitioner stated:

> Mr. Moore was denied effective assistance of counsel when his retained attorney allowed [him] to enter a plea to terms of a sentencing agreement that was different from those discussed and agreed to with Mr. Moore.

(Mich. Appl. for Leave to Appeal, ECF No. 5-6, PageID.190.)  The Michigan Supreme Court denied leave by order entered March 27, 2020.  (Mich. Order, ECF No. 5-6, PageID.187.  This timely petition followed.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004))

(internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can

review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    The validity of Petitioner's plea

In Petitioner's submissions to this Court he reveals, for the first time, the nature of his misunderstanding.  "Petitioner had a reasonable expectation to believe [his counsel] that he could possibly be sentenced to time served. . . . Petitioner Moore pled guilty because he was told by [his counsel] that his sentence would likely be a period of a year in the county jail, which in essence, that would be time served." (Pet., ECF No. 1, PageID.16–17.)  To support his claim, Petitioner references a statement he made at the sentencing hearing immediately before the judge handed down Petitioner's sentence.  After the judge invited Petitioner to speak before the court-imposed sentence, Petitioner stated:

> I was just trying to see if I can get, I can get time served for the year I've been in here?

(Sentencing Tr., ECF No. 5-3, PageID.122.)

One might reasonably interpret Petitioner's inquiry as relating to credit for time served, i.e., could he get credit against his felony-firearm sentence for the time he spent in jail after his arrest?[2] But Petitioner's challenge in this Court reveals that such an interpretation would be incorrect. Instead, Petitioner was asking the judge if he could limit Petitioner's entire sentence to the year Petitioner had spent in jail awaiting resolution of the murder charge. Petitioner claims he anticipated that result because his attorney had led him to believe he would receive a "time served" sentence.[3] Petitioner's claim is, at best, far-fetched.

Petitioner never presented this claim to the state courts. Indeed, his affidavit was executed after the Michigan Supreme Court denied leave to appeal. For that reason, Respondent notes that the claim is unexhausted.

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional

---

[2] And, as explained above, he could (and apparently did) get credit for that time against his parole sentences. He could not, however, get credit against his felony-firearm sentence.

[3] In an affidavit signed on October 15, 2020, Petitioner avers:

> [My attorney] came to the bull pen on October 29, 2018, the day of my trial, and told me that a sentencing agreement was arranged which could result in time served if I pled guilty. In my mind I assumed I would get time served.

(Pet'r's Affid., ECF No. 1-1, PageID.28.)

claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). A petitioner has fairly presented his claims when he identifies the constitutional right that he claims has been violated and the particular facts which supported his claims to the state courts. *Onifer v. Tyszkiewicz*, 255 F.3d 313, 315 (6th Cir. 2001). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner's appellate briefs indicate that he took issue with the sentence and that he expected a shorter sentence. But the vague presentation in Petitioner's appellate submissions are a far cry from the claim that his attorney told him he could get a sentence of one-year in the county jail, a length of time he had already served. Essentially, Petitioner claims that he pleaded guilty to murder expecting to be released when he was sentenced. That claim was never raised in the state courts or, at a minimum, it was never fairly presented to the state courts.

12

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c).  Petitioner has at least one available procedure by which to raise the issues he has failed to present to both Michigan appellate courts.  He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq*.  Under Michigan law, one such motion may be filed after August 1, 1995.  Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion.

Although Petitioner's failure to exhaust this particular factual scenario in the state courts prevents this Court from granting habeas relief, it does not foreclose denying such relief on the merits.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a district court should deny a stay where unexhausted claims are meritless because, under 28 U.S.C. § 2254(b)(2) such claims may be properly denied); *Smith v. Nagy*, 962 F.3d 192, 204 (6th Cir. 2020) (court rejected unexhausted claim on the merits citing 28 U.S.C. § 2254(b)(2)); *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (explaining that a district court may "ignore the exhaustion requirement altogether and *deny* the petition if *none* of the petitioner's claims has any merit") (emphasis in original).  Respondent urges the Court to deny Petitioner's claim despite the fact that he has not exhausted them in the state courts.  As set forth below, Petitioner's claim that his plea was involuntary

has no merit; accordingly, the Court will consider, and deny relief on, Petitioner's unexhausted claims.

"It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  On the other hand, a plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find that a guilty plea is constitutionally valid, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  Petitioner does not contend he is incompetent, and Petitioner had adequate notice of the charges against him.

The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered

14

unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). Petitioner does not argue that his plea was induced by threats or that his will was otherwise overborne.[4]

_____

[4] In the state court, Petitioner made reference to the fact that he entered the plea out of misapprehension and fear. The fear, however, appears to be nothing more than the fear that exists in every criminal prosecution. In Petitioner's case, that fear was well-grounded. Petitioner attaches to his petition a letter his trial attorney wrote to the Michigan Attorney Grievance Commission in response to a grievance Petitioner filed. In the letter, counsel noted the following:

> As the evidence on the case developed, it became apparent to Mr. Moore, his family, and myself that the evidence was overwhelming against him. Mr. Moore's DNA was found on the weapon (on the trigger and gun stock) that the Prosecution would prove was the firearm used to kill the deceased. The shooter's clothing description fit nearby gas station video footage showing Mr. Moore shortly after the shooting. Mr. Moore's parole officer identified Mr. Moore from the video footage from the gas station.

> A police expert testified at [the preliminary] examination that a phone (shown to be associated with Mr. Moore) showed searches for "Murder on Rossiter Street East Side Detroit" (where the homicide took place) and a search on "how to take the bottom of[f] a SKS clip". (the type of weapon used in this homicide).

(Corr., ECF No. 1-2, PageID.30–31.) Petitioner faced a significant risk that he would be convicted of first-degree murder, carrying a mandatory life sentence without parole, and an almost inevitable conviction of at least second-degree murder and a felony-firearm violation. Moreover, Petitioner was charged as a habitual offender. He faced a significant minimum sentence—more significant than the sentence he bargained for—if he were convicted. He had good reason to fear trial. That fear, however, would not render a plea involuntary and he has not repeated the claim as a justification for his habeas challenge.

The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Petitioner's attack focuses on this requirement.  He contends that he did not truly understand the consequences of his plea—because counsel misrepresented them.  Petitioner contends, therefore, that his counsel rendered ineffective assistance.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the

16

time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.

Petitioner makes that claim here.  Petitioner contends his counsel rendered ineffective assistance when he advised Petitioner that a plea of guilty would result in sentence of "time served."  He supports that contention with his affidavit.  The state court did not specifically address the credibility of Petitioner's claim because he never raised the claim that way in the state courts.

The undersigned finds Petitioner's claim to be incredible.  Nonetheless, if counsel gave that advice, in light of the minimum sentence range based upon the likely scoring of the sentencing guidelines and the specific agree-upon sentence, it

would have been professionally unreasonable.  Even in that circumstance, however, Petitioner could not show any prejudice.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Garcia,* 991 F.2d at 326.  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain.  In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other

terms.  The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry."  *Baker*, 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976)).

The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also a § 2255 case.  In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty.  The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement.  982 F.2d at 1026.  Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing.  Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

Petitioner's claim that counsel led Petitioner to believe he would receive a "time served" or one-year sentence is directly contrary to his admissions during the plea hearing.  The court specifically advised Petitioner that his sentence for felony-firearm would be five years and that his sentence for second-degree murder would be seventeen to forty years and that the sentences would be consecutive to each other and to Petitioner's parole sentence.  The trial judge asked Petitioner if he understood; Petitioner responded "Yeah."  (Plea Tr., ECF No. 103–105.)  Petitioner did not object; he did not raise any concern at that time that the consecutive string of sentences

totaling at least 22 years and perhaps decades more was not "time served" or one year, as he claims he expected.  Petitioner is bound by his statements.  The plea colloquy forecloses his present claim.

Whether or not counsel advised Petitioner that his plea would result in a one-year sentence, Petitioner cannot show prejudice.  The court corrected any possible misperception counsel created.  If Petitioner entered that hearing believing that he would receive a sentence of "time served" or one-year, the court disabused him of that belief when he told Petitioner the actual sentence Petitioner could receive, the very sentence he had agreed to.  Nonetheless, despite that understanding, Petitioner still entered his plea.

Petitioner must show that he was prejudiced by the misstatement or failure to properly advise him of the consequences of his plea.  *See Hill*, 474 U.S. at 59 ("In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.")  Under the circumstances present here, Petitioner cannot make that showing.

To the extent the Michigan Court of Appeals resolved this claim when it declared Petitioner's appeal had no merit, that determination was well-grounded in the record and was neither contrary to, nor an unreasonable application of, clearly established federal law.  To the extent this claim was not presented to the state courts, and this Court is reviewing the claim *de novo*, Petitioner has failed to show

that he was prejudiced by counsel's alleged statements regarding Petitioner's sentence.  Either way, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, for the same reasons I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, and because the foundation of Petitioner's claim is so patently incredible, I conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court certify that an appeal would not be taken in good faith.

Dated:  August 2, 2021                         /s/ Phillip J. Green
                                                     PHILLIP J. GREEN
                                                     United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).